IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DAVID W. GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 115-188 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff David W. Green appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.    BACKGROUND**

Plaintiff is a sixty-one year old male born on January 11, 1955. Tr. ("R."), p. 226. Plaintiff completed high school and has been employed as a janitor, machinist, and security officer. R. 286. On November 17, 2010, Plaintiff protectively filed applications for Title II benefits and SSI alleging a disability onset date of October 31, 2010. R. 22. On October 26, 2012, an ALJ issued an unfavorable decision, finding Plaintiff retained the residual functional

capacity ("RFC") to perform his past relevant work. (Id.) Plaintiff did not take further action on those applications. (Id.)

On December 7, 2012, Plaintiff protectively applied for SSI and DIB alleging a disability onset date of October 27, 2012, the day after the prior unfavorable decision. R. 226. The Social Security Administration denied Plaintiff's application initially, and on reconsideration. R. 65, 133. Plaintiff requested a hearing before an ALJ, and the ALJ held a hearing on October 17, 2014. R. 41. The ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from Mark Leaptrot, a Vocational Expert. Id. On December 24, 2014, the ALJ issued an unfavorable decision. R. 22-33.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 27, 2012, the alleged onset date (20 C.F.R. § 404.1571 *et seq*., and 416.971 *et seq*.).

2. The claimant has the following severe impairments: Diabetes Mellitus and Bipolar Disorder NOS (20 C.F.R. § 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except with the need to avoid concentrated exposure to hazards such as machinery, heights and similar circumstances; with the ability to understand, remember and carry out short and simple instructions; occasionally understand, remember and carry out detailed instructions; with the ability to concentrate for two-hour blocks of time and occasionally concentrate for extended periods up to four hours; and, with no more than occasional contact with supervisors, co-workers or the general public.

> 5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

R. 24-31.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff filed this civil action requesting reversal or remand, arguing the ALJ failed to (1) state the weight given to two treating physician opinions and Global Assessment of Functioning ("GAF")[1] scores, and (2) properly evaluate Plaintiff's credibility. See doc. no. 16 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 18 (Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by

---

[1] According to the American Psychiatric Association Diagnostic & Statistical Manual of Mental Disorders,

> The GAF is a 100-point scale divided into 10 numerical rangers, which permits clinicians to assign a single-ranged score to a person's psychological, social, and occupational functioning. GAF scores of 41 to 50 indicated serious symptoms . . . or any serious impairment in social, occupational, or school functioning . . . ; scores of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers).

Stone v. Comm'r of Soc. Sec., 586 F. App'x 505, 508 & n.2 (11th Cir. 2014).

3

substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

correct legal standards were in fact applied, the Court must reverse the decision. <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. **Weight of Opinion by Treating Physicians and Consulting Physicians.**

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. <u>Schnorr v. Bowen</u>, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986); <u>see also</u> <u>Crawford</u>, 363 F.3d at 1159 (ruling ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to contrary shown); <u>Broughton v. Heckler</u>, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997); <u>see also</u> <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with doctor's treatment notes and claimant's testimony regarding daily activities). Furthermore, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never

5

entitled to controlling weight or special significance. SSR 96-5p; <u>see also</u> 20 C.F.R. § 416.927(d).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. <u>Crawford</u>, 363 F.3d at 1160-61. In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. <u>See</u> 20 C.F.R. § 416.927(c)(1)-(2), (5).

An ALJ has a duty to develop the facts of the case fully and fairly. <u>Todd v. Heckler</u>, 736 F.2d 641, 642 (11th Cir. 1984) (citing <u>Ford v. Sec'y of Health and Human Serv.</u>, 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is required to "state specifically the weight accorded to each item of evidence and why she reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." <u>Id.</u> It is insufficient for an ALJ to state that he considered all of the evidence when he does not indicate what weight he accorded to the evidence considered. <u>Ryan v. Heckler,</u> 762 F.2d 939, 942 (11th Cir. 1985). Although the failure to explicitly assign weight is ordinarily reversible error, <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Circ. 1987), it is excusable as harmless error when the error does not affect the ALJ's ultimate findings. <u>Tillman v. Comm'r, Soc. Sec. Admin.</u>, 559 F.

App'x 975 (11th Cir. 2014) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).

### B. The ALJ Properly Evaluated Drs. Puder and Cai's Opinions.

Plaintiff contends the ALJ failed to explicitly assign weight to the opinions of two treating physicians, Drs. Rhett J. Puder and Anmei Cai, and also did not assign weight to their GAF scores. Pl.'s Br. 9-13. Plaintiff further contends the ALJ never mentioned Dr. Puder's comments that Plaintiff was struggling with "linear thinking, concentration, distractibility, and worthwhile behaviors towards achieving goals such as finding employment, getting his own place, etc." Id. at 13. The Commissioner argues (1) the ALJ was not required to specifically refer to every piece of evidence so long as the ALJ's decision shows the ALJ considered Plaintiff's medical condition as a whole; and (2) GAF scores are not entitled to any weight. Comm'r's Br. 6. The Commissioner argues Dr. Puder's statements are not entitled to any significance because the record suggests the statements were merely Plaintiff's subjective complaints, and not medical opinion evidence. Comm'r's Br. 12.

As the ALJ discussed extensively in his review of the medical record, psychologist Dr. Puder began evaluating Plaintiff on April 17, 2013. R. 571. Dr. Puder noted Plaintiff was highly talkative and distractible, and expressed a desire to "get back on his medications." R. 572. Dr. Puder noted Plaintiff was adequately groomed, had logical, coherent, and well-organized speech, was alert and oriented, yet displayed somewhat disorganized thought process with loose associations and a flight of ideas. Id. Dr. Puder diagnosed Plaintiff with bipolar disorder and assigned a GAF score of 42. Id. Dr. Puder also noted Plaintiff was highly intelligent and displayed a motivation for change. Id.

Dr. Puder met with Plaintiff again on May 3, 2013, opining Plaintiff's mood was fairly good, although he appeared to be highly talkative and distractible. R. 562. Dr. Puder noted

7

Plaintiff had a somewhat disorganized thought process with grandiose and plentiful thoughts, but did not display any evidence of hallucinations, delusions or distorted ideations.  Id.  Dr. Puder maintained his diagnoses of bipolar disorder and GAF score of 42.  R. 563.

Dr. Puder saw Plaintiff again on November 14, 2013.  During the interview, Plaintiff reported an increase in his mood and told Dr. Puder he was looking for work.  R. 942.  Plaintiff expressed his desire to increase his exercise levels and focus on personal growth, but claimed he was having great difficulty with linear thinking, concentration, distractibility, and engaging in worthwhile behaviors towards achieving goals such as finding employment and his own place.  R. 943.  Plaintiff also told Dr. Puder he was attempting to receive a VA pension and Social Security benefits which had been denied three times.  Id.  Dr. Puder again opined Plaintiff had normal appearance, mood, affect, memory, cognition, thought content, judgment, and insight, but a somewhat disorganized thought process.  Id.  Dr. Puder assessed Plaintiff's GAF score to be 44 and referred Plaintiff to Dr. Cai for an evaluation the following week.  R. 944.

On November 27, 2013, Dr. Anmei Cai, a psychiatrist, evaluated Plaintiff through a mental status examination.  R. 938.  Dr. Cai noted Plaintiff was appropriately dressed, cooperative, had normal posture, movement, was pleasant, and did not have any delusions or impaired judgment.  R. 938-39.  However, Dr. Cai noted Plaintiff's thought process was tangential, circumstantial, and disorganized.  Id.  Dr. Cai diagnosed Plaintiff with bipolar disorder, prescribed Geodon, and assigned Plaintiff a GAF score of 55.  R. 939.  Dr. Cai evaluated Plaintiff again on January 21, 2014, and although Plaintiff mentioned he was argumentative with his sister, he said that he was "doing better" with the medication.  R. 1117.  Dr. Cai prescribed Ambien, increased Plaintiff's Geodon dosage to forty milligrams, and increased Plaintiff's GAF score to 59.  R. 1118.

Plaintiff's subsequent appointments with Drs. Puder and Cai demonstrated continuing improvement with the prescribed medication. R. 29, 1086-92. Dr. Puder evaluated Plaintiff on March 13, 2013, and assigned a GAF score of 48, which was increased to 54 one month later. R. 1101, 1091. In April 2014, Dr. Cai evaluated Plaintiff and increased his GAF score to 60. R. 1086-92.

The ALJ expressly considered the medical opinions of Doctors Puder and Cai and noted continuing improvement in Plaintiff's GAF scores as a result of medication. R. 29. Although the ALJ did not explicitly assign these opinions weight, it is unquestionable he gave them great weight. The ALJ's RFC findings were consistent with both Drs. Puder and Cai's opinions regarding Plaintiff's symptoms and the effectiveness of the medication in controlling Plaintiff's symptoms, and were consistent with the record medical evidence.

Thus, the ALJ expressly considered Drs. Puder and Cai's opinions, the objective medical evidence in the record, and Plaintiff's testimony in determining Plaintiff was not disabled and was capable of work. R. 29-31. Accordingly, any failure on the part of the ALJ to explicitly assign weight to Drs. Puder and Cai's opinions did not affect his ultimate findings and was harmless. See Tillman, 559 F. App'x at 975 (finding ALJ's failure to explicitly assign weight to two treating physicians was harmless); Golden ex rel. N.B. v. Comm'r of Soc. Sec., No. 8:14-CV-1804-T-27JRK, 2015 WL 5604950, at *13 (M.D. Fla. Sept. 23, 2015) (finding ALJ's failure to specifically assign weight to medical opinion did not affect ultimate findings and was harmless); see also Dyer v. Barnhart, 359 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision so long as the ALJ's decision [enables the court] to conclude that the ALJ considered [plaintiff's] medical condition as a whole.")

Plaintiff's argument the ALJ erred by failing to explicitly assign weight to the GAF scores is likewise unavailing. Pl.'s Br. 12. As the Commissioner correctly notes, "[t]he Commissioner does not endorse GAF scores in social security disability cases because they have no direct correlation to the severity requirements of the mental disorders listings." Greene v. Comm'r of Soc. Sec., No. 6:11-cv-1357-Orl-GJK, 2013 WL 1278091, at *7 (M.D. Fla. Mar. 28, 2013) (citing Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005)) (internal quotation marks omitted); see also Nye v. Comm'r of Soc. Sec., 524 F. App'x 538, 545 (11th Cir. 2013) ("[T]he Commissioner has noted that the GAF scale 'does not have a direct correlation to the severity requirements in our mental disorders listings.'") Although GAF scores may be helpful in formulating an RFC assessment, they are not essential to the RFC's accuracy and "an ALJ's failure to describe GAF scores does not render [the RFC] inaccurate." Thornton v. Comm'r, Soc. Sec. Admin., 597 F. App'x 604, 613 (11th Cir. 2015) (finding ALJ's decision supported by substantial evidence even though ALJ did not refer to or discuss every GAF score).

Here, the ALJ extensively reviewed and considered Plaintiff's GAF scores. R. 29. The ALJ noted Plaintiff's GAF scores increased as Plaintiff received both medication and psychotherapy, rising from a low of 44 in November 2013, to a high of 60 in April 2014. Id. Consequently, Plaintiff's reliance on McCloud v. Barnhart, 166 F.App'x 410 (11th Cir. 2006) is unavailing. Unlike the ALJ in McCloud, the ALJ here did not misinterpret any of Plaintiff's GAF scores, which eliminates the concern in McCloud that the ALJ's denial of benefits was based on a misunderstanding of the evidence. Id. Instead, the ALJ's opinion demonstrates he considered Plaintiff's GAF scores in determining Plaintiff was improving with both therapy and medication and could perform work within the ALJ's RFC finding.

See R. 29. In light of the ALJ's extensive discussion of Plaintiff's GAF scores, the ALJ's failure to explicitly assign weight to the scores provides no basis for remand. See Thornton, 597 F. App'x at 613-14.

Finally, Plaintiff argues the ALJ failed to properly evaluate Dr. Puder's statement that Plaintiff was struggling with "linear thinking, concentration, distractibility, and worthwhile behaviors towards achieving goals such as finding employment, getting his own place, etc." R. 943; Pl.'s Br. 13. However, this quote from Dr. Puder's medical opinion was not a medical judgment, but was merely a summary of Plaintiff's own subjective statements and complaints. See R. 943. In addition, Plaintiff's statement was made in November 2013, before he received medication and therapy, and as the ALJ noted, Plaintiff saw continued improvements through April 2014. R. 1086-92, 1100-02, 1109-18. Accordingly, this statement provides no basis for remand.

### C. Substantial Evidence Supports the ALJ's Credibility Determination.

Plaintiff argues the ALJ's credibility determination is not supported by substantial evidence because the ALJ merely summarized Plaintiff's hearing testimony, and never provided reasons for finding his statements not entirely credible. Pl.'s Br. 14-15. The Commissioner argues the ALJ made a proper credibility determination that is supported by substantial evidence. Comm'r's Br. 13-18.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical

11

condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer, 395 F.3d at 1210-11.

As explained below, the ALJ properly conducted the Holt analysis and reached the conclusion that Plaintiff's medically determinable impairments could possibly cause the alleged symptoms, but his subjective complaints concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.

In finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible, the ALJ discussed Plaintiff's hearing testimony. R. 27, 50-58. The ALJ specifically noted Plaintiff resides at the VA personal care facility, and acknowledged Plaintiff feels depressed, unmotivated, and experiences

12

weekly crying spells. Id. However, the ALJ also noted Plaintiff goes to church once a week, goes out to dinner with his roommate on Fridays, and gets along with the other residents. Id.

The ALJ extensively discussed items in the medical record that undermine Plaintiff's allegations of disabling limitations. As the ALJ iterated, Plaintiff was treated by Drs. Puder and Cai, was provided therapy and medication, and saw continued improvement. R. 29. The ALJ also relied on consultative examiner and psychologist Dr. John Grace's opinion in determining Plaintiff's subjective complaints were not entirely credible. R. 30. Dr. Grace evaluated Plaintiff on April 21, 2011, and opined Plaintiff was willing to work, would probably be able to manage working eight hours a day, and could concentrate on a task across a typical working day. R. 30, 335. Dr. Grace further opined Plaintiff's thought content was appropriate, his concentration was not impaired, he appeared capable of making rational decisions, and could maintain regular attendance. R. 339-340.

The ALJ also relied on non-examining state medical consultant Dr. Joseph Garmon's opinion in evaluating Plaintiff's subjective complaints. R. 27, 105-110. As the ALJ detailed, Dr. Garmon found Plaintiff could perform work at the medium exertional level with the need to avoid concentrated exposure to hazards such as machinery and heights. R. 27. Dr. Garmon determined Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand for a total of six hours in an eight hour workday. R. 106. Dr. Garmon opined Plaintiff had understanding and memory limitations, but was not significantly limited in understanding and remembering short and simple instructions, and had no substantial limitations in his ability to understand and remember detailed instructions. R. 108. Dr. Garmon opined Plaintiff could perform simple tasks and focus up to two hours at a time. Id.

Although Plaintiff argues the ALJ failed to consider Plaintiff's residence in the VA personal care facility or the episodic nature of his illness, these assertions are belied by the record. Pl.'s Br. 16-18. The ALJ expressly acknowledged Plaintiff's residence in the VA personal care facility, and accounted for Plaintiff's living conditions in evaluating his subjective complaints. R. 27, 30. The ALJ expressly acknowledged that Plaintiff moved to the facility only because he could not find any other living arrangement after his family informed him he could not live with them. R. 27, 58. Furthermore, Plaintiff testified he could leave the facility at any time upon finding other living arrangements. R. 56, 58.

Contrary to Plaintiff's contentions, the ALJ properly considered Plaintiff's bipolar disorder in its entirety, and did not merely focus on good or bad intervals. As discussed *supra*, the ALJ thoroughly considered the medical evidence, including Plaintiff's numerous examinations for his bipolar disorder by Drs. Puder and Cai, and acknowledged Plaintiff's improvements with medication and therapy. R. 29. The ALJ also considered Dr. Grace's examination and Dr. Garmon's review of the entire record in reaching his credibility determination, and accordingly, the ALJ fully considered the entire nature of Plaintiff's mental illness.

In sum, the ALJ relied on the record evidence, medical opinions, and Plaintiff's hearing testimony in discrediting Plaintiff's subjective complaints. The ALJ extensively discussed the entire record and determined it did not show functional limitations of the severity claimed by Plaintiff. Although Plaintiff may disagree with the conclusion reached by the ALJ, the credibility determination is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 17th day of November, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA